Buhler, Appellant, vs. Smith, Executrix, Respondent.

*January 8—January 29, 1907.*

*Landlord and tenant: Eviction.*

1. Where a tenant, as part of his covenants, agreed to build a tobacco shed, and the landlord gave notice to a lumber dealer, with whom the tenant was negotiating for material for the shed, that he was the owner of the premises and would not pay for the material to be so furnished, the landlord was within his rights, and the fact that the lumber dealer thereafter refused to furnish and sell to the tenant the material under arrangements theretofore made did not prevent the tenant from securing the necessary material from the dealer upon other conditions, or from purchasing it in the open market.
2. Such acts on the part of the landlord did not constitute a breach of the lease or grounds for its abandonment by the tenant.

APPEAL from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

Plaintiff sues to recover for breach of a lease and option contract. It appears that on January 4, 1904, plaintiff made

a contract with W. J. Smith, now deceased, by which Smith agreed to lease and sell plaintiff a farm. The lease was for five years with an option to purchase. It fixed the amount to be paid annually by plaintiff, and what part of the sum was to be applied as a payment for the option and to be credited on the purchase price of the farm should plaintiff elect to purchase the property under the agreement. Among the obligations assumed by plaintiff he agreed "to make improvements during the first year as follows: to build a tobacco shed twenty-seven (27) feet by one hundred and twelve (112) feet, eighteen (18) foot posts; to build a kitchen on the house he occupies, sixteen (16) feet by eighteen (18) feet, on fourteen (14) foot posts." Plaintiff went into possession of the premises in January, 1904, and cultivated the farm for that season. He paid Smith two of the monthly instalments under the contract, and he alleges that he arranged an extension of time of payment for the instalments due after March 1, 1904, to such time in the latter part of the year as he should realize on his crops. He built the kitchen in part during the earlier portion of the season, made arrangements for the purchase of the necessary lumber for the tobacco shed, and by starting the foundation and piers undertook its construction. It appears that Smith, through his attorney, at this time notified the lumber dealer with whom plaintiff had arranged to furnish the lumber for the tobacco shed that he (Smith), as owner of the land, would not be responsible for the cost of such material should plaintiff fail to pay for it, and forbade plaintiff's employees to construct the foundation of the shed on which they were then engaged, threatening them with arrest if they continued the construction of the shed on the premises. Plaintiff was not present at the time of such interference with the employees. The employees continued in the work of building the foundation throughout that day, and then communicated to plaintiff the action taken by Smith to prevent the erection of the shed. After Smith had notified

the lumber dealer that he would assume no responsibility for·
the cost of the lumber for the tobacco shed which plaintiff in-
tended to erect on the farm and had forbidden plaintiff's em-
ployees building the foundation, plaintiff negotiated with the·
lumber dealer for the purchase of this material, but failed to.
make such purchase, and therefore abandoned the undertak-
ing to build the tobacco shed. He thereafter notified Smith's.
attorney and representative that he would move off the prem-
ises in the following December or January, after having
harvested the season's crop. To this Smith assented. Plaint-
iff removed from the premises at the end of the first year's
tenancy. Collection of the unpaid monthly instalments was·
enforced by litigation. Plaintiff prosecutes this action as a
claim for damages against the estate of W. J. Smith, now de-
ceased, upon the ground that through the acts of Smith in
his lifetime, resulting in his damage, he was compelled to·
abandon the contract of lease and option.

For the appellant the cause was submitted on the brief of
*F. K. Shuttleworth,* and for the respondent on that of *Smith
& Rogers.*

SIEBECKER, J. The evidence shows that the plaintiff re--
moved from the premises at the conclusion of the first year's
tenancy created by the lease. He claims to have abandoned
the lease and contract upon the ground that he was prevented
by the lessor, W. J. Smith, now deceased, from fulfilling the
obligations provided for by the contract in respect to the build-
ing of a tobacco shed. The failure to build the tobacco shed
is claimed to have materially impaired the use of the farm.
It is averred that Smith prevented the construction of this
shed by interfering with the delivery of the lumber which
plaintiff had purchased to build the shed by forbidding the·
construction of the building on the premises and by threaten-
ing to invoke legal proceedings to stop plaintiff and his em-
ployees should they persist in the effort to build it as they

had undertaken to do. The evidence adduced shows that plaintiff had bargained for lumber from which to build this shed, and that the dealer was about to deliver it when Smith notified the seller of this material that plaintiff was in possession of the premises as lessee, and, if such material were sold and delivered to the plaintiff to be used on the premises, that he must look to plaintiff for the purchase price, and that he, the lessor, would not deem himself obligated therefor. At this time, or immediately preceding the giving of this notice, the lessor personally gave notice to plaintiff's employees engaged in building the shed that he objected to its erection, and he threatened to stop them through legal proceedings if plaintiff persisted in building it. Plaintiff was informed of this conduct of the lessor and no further work was done on the foundation. Thereafter plaintiff and the lumber dealer had negotiations for the sale of the lumber for which plaintiff had originally bargained, but they failed to agree upon any terms upon which the dealer would sell and deliver it. Nothing was done to obtain the material elsewhere by plaintiff.

It is clear that this difficulty between the parties arose because the lessor deemed himself liable for the cost of the lumber if it should be used on the premises in case plaintiff failed to pay for it. It is also obvious that plaintiff did not desist from his efforts to build the shed because the lessor had forbidden his employees proceeding with the foundation, but, when he was thereafter notified by the dealer that the lumber would not be delivered as agreed between them, he attempted through further negotiations to secure it, and manifestly gave up building the shed because he failed to make satisfactory arrangements for the purchase of the lumber. He thereafter abandoned the lease because, as he stated, he needed the shed to make profitable use of the farm. This being the cause of his abandonment, the question is: Was the lessor's conduct in that respect a breach of the lease and good ground for plaintiff to declare the agreement ended and justify him in aban-

doning the farm? 2 Wood, Landl. & T. (2d ed.) 1107. The evidence is clear that the notice given by the lessor to the lumber dealer went no further than to apprise him of the fact that plaintiff was not the owner of the premises and that the lessor would not pay for the material furnished for the improvement of the premises. This the lessor had the right to do, and the fact that the lumber dealer thereafter refused to furnish and sell to plaintiff the material under the arrangements theretofore made did not prevent plaintiff from securing the necessary material from the dealer upon other conditions or from purchasing it in the open market. Such acts on the part of the lessor do not constitute a breach of the lease or grounds for its abandonment by the lessee. Plaintiff was not thereby prevented from performing the agreements of the lease, but was left in the full enjoyment of the property. From this it results that there is no evidence tending to sustain plaintiff's claim that he was deprived of the beneficial enjoyment of the premises by the wrongful conduct of the lessor, and the court properly awarded judgment for the defendant.

*By the Court.*—Judgment affirmed.